NOTICE
Decision filed 11/24/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 250674-U

NO. 5-25-0674

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 25-CF-162 |
| | ) | |
| DAVONTA K. BOYD, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HACKETT delivered the judgment of the court.
Presiding Justice McHaney and Justice Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court's orders granting the State's verified petition to deny pretrial release and denying the defendant's motion for relief are affirmed.

¶ 2    The defendant, Davonta Boyd, appeals the August 19, 2025, denial of his motion for relief and immediate release and the August 14, 2025, order of the trial court of Jefferson County that granted the State's petition to deny pretrial release. The defendant filed a timely notice of appeal, and the Office of the State Appellate Defender (OSAD) was appointed to represent the defendant. OSAD filed a notice in lieu of a memorandum pursuant to Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024). We acknowledge that the defendant is not required to file a memorandum, and the motion for relief will serve as the defendant's argument on appeal. For the reasons that follow, we affirm.

1

¶ 3                    I. BACKGROUND

¶ 4     On July 31, 2025, the defendant was charged by information with aggravated discharge of a firearm, a Class 1 felony. 720 ILCS 5/24-1.2(a) (West 2024). The defendant was arrested on that charge on August 6, 2025. On August 7, 2025, the State filed a verified petition to deny pretrial release. The petition alleged two factors for denying the defendant pretrial release, that the defendant is charged with a forcible felony, and the felony is an enumerated offense. (725 ILCS 5/110-6.1(a)(1.5)) (West 2024). Further, the petition alleges defendant's release would pose a real and present threat to the safety of any person or persons or the community. *Id.* § 110-6.1(a)(6)(A). The trial court scheduled a detention hearing and preliminary hearing for August 8, 2025. On August 8, 2025, the defendant made an oral motion to continue the detention hearing to August 14, 2025, which was granted.

¶ 5     On August 14, 2025, the trial court conducted a hearing on the State's petition, which was held concurrently with the preliminary hearing by agreement of the parties. The State called Detective Brylan Morlan of the Mt. Vernon Police Department (MVPD). Detective Morlan testified that on July 27, 2025, MVPD responded to the area of 15th Street and Lamar Avenue in response to a shooting. Upon arrival, officers observed numerous individuals at the scene—some running, others suffering from gunshot wounds. In total, seven individuals, including two deceased victims, had been shot, and several vehicles had also been struck by gunfire. Based on witness interviews and security footage, police identified three primary suspects: the defendant, Jamaro Kemmerling, and Dequan Hopkins.

¶ 6     The State introduced into evidence four video clips recorded by city security cameras positioned at the intersection of 15th Street and Lamar Avenue. The first clip, shown in monochrome, was described by Detective Morlan as depicting the defendant walking while

2

holding something near the waistband of his pants. The defendant is wearing jeans, lighter-in-color shoes, and a t-shirt with a large graphic on the front. Detective Morlan testified that two individuals, Nevaeh Gladney and A'Lyric Wilson, identified the defendant after being shown still images from the clip. Two police officers also stated they recognized the defendant from the still image.

¶ 7      The second clip, shown in color, was described by Detective Morlan as depicting the defendant walking along a line of parked cars. A large yellow graphic can be seen on the back of his black t-shirt. The State emphasized the defendant's unique clothing on the night of the incident.

¶ 8      The third clip, shown in color, was described by Detective Morlan as depicting the defendant moving between blue trash cans and a red or maroon vehicle. The defendant is then seen running in front of a silver car and extending his arm toward a crowd. As he's doing so, a flash of light can be seen. Detective Morlan described the flash as that of a muzzle flash. Detective Morlan testified that he was able to determine the flash of light was a muzzle flash from watching the footage and from the recovery of shell casings in that area. The footage also shows a crowd of people behind the defendant in the direction his arm is extended.

¶ 9      The fourth clip, shown in monochrome, was described by Detective Morlan as depicting the defendant and Kemmerling running together away from the crowd. Detective Morlan stated that the defendant, Kemmerling, and Hopkins can be seen together in these clips, and they are known to associate with each other.

¶ 10     On cross-examination, Detective Morlan testified that he believed the defendant possessed and fired a gun that night based on the flash of light observed in the surveillance video and the shell casings found in the area where the defendant was seen running. He acknowledged, however, that the video footage was grainy and of poor quality, making it difficult to discern with certainty

what the defendant was holding. Morlan further testified that police had not recovered any firearm believed to have been discharged at the scene, and it remained unknown what the defendant had been holding near his waistband. Additionally, no witnesses reported seeing the defendant in possession of or firing a gun. Defense counsel argued that another potential shooter had been earlier detained and later released when a review of the security footage showed the observed flash more closely resembled that of a flashlight or phone, rather than a muzzle flash. At the conclusion of the preliminary hearing, the court found that probable cause existed to support the charge of aggravated discharge of a firearm.

¶ 11    The court then proceeded directly into the detention hearing. The State summarized the previously offered evidence and asked that the court find that (1) a detainable offense had been committed, (2) the defendant poses a real and present threat to the safety of the community, and (3) that no condition or combination of conditions can mitigate the real and present threat posed by the defendant.

¶ 12    The State argued it had satisfied all three statutory elements required to detain the defendant. Specifically, the State contended it had proven by clear and convincing evidence that the defendant had committed a qualifying offense. Witnesses identified the defendant in surveillance footage captured by the city's street camera system, and law enforcement tracked the defendant through a second camera view. Further, the State argued that the defendant was identifiable throughout all four clips due to his unique clothing and can be seen extending his arm towards the crowd followed by a flash that Detective Morlan identified as a muzzle flash. Lastly, the defendant poses a real threat to members of the community and that no condition or combination of conditions would be sufficient to mitigate this risk. At the time of the instant offense, he was on special first-offender firearm probation for unlawful use of a weapon. He also

4

has a pending methamphetamine charge and now faces an additional aggravated discharge of a firearm offense. Together, these circumstances demonstrate a pattern of noncompliance with judicial directives and ongoing criminal conduct.

¶ 13    The defendant proceeded by way of proffer regarding his family situation and criminal background. He stated that, prior to his arrest, he was employed at the Walgreens Distribution Center, but was unable to keep this job due to transportation issues, as he does not have a driver's license or a vehicle. He asserted that he is not a convicted felon and has family ties in Jefferson County and has a place where he can stay. He is a high school graduate. Lastly, that he only scored a two on the Virginia Pretrial Risk Assessment Tool. Additionally, he has never been sentenced to the Department of Corrections.

¶ 14    The defendant emphasized the poor quality of the security footage and the female who was released from custody upon further review of the footage. The defendant concluded by stating that even if the court found that a detainable offense had been committed, and the defendant was a threat to the public and community, conditions could be put into place to ensure his appearance and the safety of the community.

¶ 15    The trial court found that the State had met its burden under the clear and convincing evidence standard. The court acknowledged that the footage was not "crystal clear," but when viewed together with Detective Morlan's testimony, the positive identifications from witnesses, the defendant's distinctive clothing, the flash consistent with gunfire, and the shell casings recovered along the defendant's path, the evidence was sufficient. The court also noted the seriousness of the charge, the defendant's unemployment, and a prior conviction for unlawful use of a weapon. Accordingly, it granted the State's petition to deny pretrial release.

5

¶ 16    On August 18, 2025, the defendant filed a motion for relief and immediate pretrial release under the pretrial fairness act. The motion alleged that the trial court failed to fully consider the defendant's ties to the community, his willingness to abide by any terms of pretrial release, his low Virginia Pretrial Risk Assessment Instrument score of 2 out of a possible 14, and that his criminal history is not excessive.

¶ 17    On August 19, 2025, the trial court heard the defendant's motion for relief. The defendant argued the contents of the motion stated above. Additionally, he stated he would submit to any conditions of release, including home confinement.

¶ 18    The State relied on the evidence it presented at the original hearing to deny pretrial release. The State argued that the trial court properly found the defendant poses a danger to the community as a whole, due to the nature of the charged offense and his disregard for existing probation conditions. The State emphasized that the defendant was on felony probation for a prior weapons-related offense, aggravated unlawful use of a weapon, at the time of the current shooting incident, demonstrating that probation had failed to deter his criminal behavior. The State further emphasized that video evidence captured the defendant extending his arm and firing a weapon, with visible smoke emerging from the barrel, and that the individual in the footage bore a strong resemblance to the defendant, including distinctive facial hair and physical features. Accordingly, the State lastly contended that no condition or combination of conditions would be sufficient to ensure the safety of the community or the defendant's compliance with the law.

¶ 19    The trial court denied the defendant's motion for relief. The trial court noted that nothing new had been presented at the hearing on the motion for relief. The trial court found that after considering everything presented previously, "a jury could reasonably deduct that this defendant was running across that yard and turned back to fire a weapon. It was clear to me." The trial court

also considered the testimony of Detective Morlan. The trial court stated one of the most important things it considered "is that the defendant was on probation for another gun charge at the time," which indicated the defendant ignored that court order, which was not to violate the law involving another weapon. The trial court did consider that the defendant had local ties to the community and had graduated high school. However, these factors were not enough to override "a clear and present threat to public safety" if the defendant were released. The defendant timely appealed.

¶ 20                                    II. ANALYSIS

¶ 21    On appeal, OSAD was appointed to represent the defendant. OSAD did not file a memorandum but filed a notice in lieu of a Rule 604(h)(7) memorandum. "Issues raised in the motion for relief are before the appellate court regardless of whether the optional memorandum is filed." Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). Therefore, our review is limited to the issues raised by the defendant in his motion for relief.

¶ 22    In his motion for relief, the defendant argued that the State failed to meet its burden that the defendant posed a real and present threat to the safety of any person or persons or the community. Further, the defendant argued that the State failed to meet its burden of proof that less restrictive conditions would not avoid the real and present threat to the safety of any person or the community.

¶ 23    However, because the defendant's motion did not assert an argument regarding whether the proof is evident or presumption great that he committed a qualifying offense, that issue is waived under Rule 604(h)(2):

> "As a prerequisite to appeal, the party taking the appeal shall first present to the trial court a written motion requesting the same relief to be sought on appeal and the grounds for such relief. The trial court shall promptly hear and decide the motion for relief. Upon appeal, any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived." Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024).

7

As such, we find that the defendant has waived the issue of committing a qualifying offense and only consider the remaining two issues.

¶ 24    Pretrial release—including the conditions related thereto—is governed by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). A defendant's pretrial release may be denied only in certain statutorily limited situations. 725 ILCS 5/110-6.1 (West 2024). Upon filing a timely, verified petition requesting denial of pretrial release, the State has the burden of proving by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* §§ 110-6.1(e), (f). The State or the defendant may present evidence to the trial court by way of proffer based upon reliable information. *Id.* § 110-6.1(f)(2). The trial court may order a defendant detained pending trial if the defendant is charged with a qualifying offense, and the trial court concludes the defendant poses a real and present threat to the safety of any person or the community (*id.* § 110-6.1(a)(1)-(7)) or there is a high likelihood of willful flight to avoid prosecution (*id.* § 110-6.1(a)(8)).

¶ 25    Our standard of review of pretrial release determinations is twofold. Where the parties to a pretrial detention hearing proceed solely by proffer or submission of documentary evidence, this court stands in the same position as the trial court and may conduct its own independent review of the proffered evidence, thus reviewing the record *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. However, where the trial court is asked to consider the testimony of live witnesses, and make

8

factual findings, such as the State's burden of presenting clear and convincing evidence that conditions of pretrial release would not protect any person or the community, the defendant has a high likelihood of willful flight to avoid prosecution, or the defendant failed to comply with previously ordered conditions of pretrial release, our standard of review is the manifest weight of the evidence. *Id.* "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). Due to the live testimony of Detective Morland, we will review under the manifest weight of the evidence standard.

¶ 26    We have thoroughly reviewed the record on appeal in this matter, including the initial detention hearing and the hearing on the defendant's motion for relief. The trial court heard testimonial evidence from the State, including testimony from Detective Morlan and security footage depicting the defendant during the commission of the offense. Based on this evidence, the court expressly found that the defendant had been identified as one of the individuals shown discharging a weapon.

¶ 27    Based on these facts, the trial court found that the defendant poses a real and present threat to the safety of the community and that no condition or combination of conditions could sufficiently mitigate that danger. In reaching this conclusion, the court relied on specific and articulable facts presented at the hearing, including the defendant's criminal history, his probation for a prior weapons offense, and the serious nature of the instant offense. The court expressly stated during its oral pronouncement that the defendant's repeated involvement in firearm-related offenses and ongoing criminal activity demonstrated that he could not be safely released under supervision. An opposite conclusion is not clearly evident or the finding itself is not unreasonable,

arbitrary, or not based on the evidence presented. Therefore, we find that the trial court's decision to detain the defendant was not against the manifest weight of the evidence.

¶ 28                                    III. CONCLUSION

¶ 29     Based on the foregoing reasons, we affirm the trial court's order granting the State's petition to deny pretrial release and the denial of the defendant's motion for relief and immediate release.


¶ 30     Affirmed.